IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:   08-60650-CIV-COHN/SELTZER

JOSEPH DUDLEY,

    Plaintiff,

vs.

VISTA HEALTH PLAN, INC.,

    Defendant.

_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**ORDER DENYING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE is before the Court upon Plaintiff's Motion for Summary Judgment [DE 11], Vista Health Plan's Cross-motion for Summary Judgment [DE 13], and Plaintiff's Motion for Judgment on the Pleadings [DE 16].[1]  The Court has considered Vista's Response to Plaintiff's Motion [DE 18] and Plaintiff's Response to the Cross-Motion [DE 19].  The Court previously granted Plaintiff's Request for Hearing and held a hearing on October 3, 2008 [DE 20].  The Court has fully considered the record in this case, and is otherwise fully advised in the premises.

I.  FACTUAL BACKGROUND

This is an action by Joseph Dudley ("Plaintiff"), a former subscriber to a group health insurance plan administered by Vista Health Plan, Inc. ("Vista" or "Defendant") pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq.

---

[1] Plaintiff's "Motion for Judgment on the Pleadings," was filed on Sept. 24, 2008, just after the Court set this matter for hearing.  The Court entered a minute order stating that the Court has interpreted Plaintiff's motion as a response to Defendant's Cross-Motion for Summary Judgment, and allowed Defendant to file a "reply" [DE 17].

("ERISA"). Plaintiff sued the Plan for ERISA breach of contract benefits because Vista retroactively terminated his benefits after Plaintiff had obtained authorizations and medical services. After Vista initially paid the medical provider, Vista recouped the money from the provider, who in turn attempted to collect the money from Plaintiff, resulting in the medical provider obtaining a judgment against Plaintiff. Plaintiff seeks the amount of the final judgment as his ERISA benefits in this action.

There are few facts, if any, in dispute. Plaintiff Joseph Dudley was employed by The Answer Group ("TAG") beginning in January of 1999. Plaintiff had group health insurance through TAG. Long before his employment with TAG, Plaintiff had been injured in a serious automobile accident in 1982, resulting in injuries to his back for which he has continually needed treatment. Plaintiff exhausted his Florida Personal Injury Protection ("PIP") insurance benefits within 16 months of the accident.

By 2003, Plaintiff was a subscriber in Vista's HMO group insurance plan through his employer, TAG. The Plan "year" started on July 1, 2003. On August 11, 2003, Plaintiff began a period of medical leave from TAG, though he remained employed. Plaintiff never returned to his duties. However, he continued to have his health insurance premium deducted and paid by TAG to Vista. On January 8, 2004, Plaintiff paid the premium of $115 by check to TAG. Sometime in February of 2004, Plaintiff presented a check to TAG in the amount of $920, which he believed would cover his health insurance with Vista through June 30, 2004. TAG forwarded the money to Vista, which accepted the premium payment (though four months later it sent the payment back).

Plaintiff continued to seek periodic medical treatment for back and neck pain through the first six months of 2004.  On multiple occasions, both he and various providers contacted Vista and orally received confirmation of his member status and authorization for treatment.  Of particular relevance to the present case, in May and June of 2004, Plaintiff received pain injections from the Coral Springs Surgery Center ("CSSC") on several different dates.  Plaintiff's affidavit clearly states that he would not have received these services if not for the oral authorization that was given by Vista to the provider.

On June 25, 2004, Vista received notice from TAG that Plaintiff's eligibility for Plan membership terminated back on January 13, 2004.  Affidavit of Delvis Chance, Director of Billing for Vista's parent company Florida Health Plan Administrators, LLC [DE 13-2].  Vista then determined that Plaintiff was no longer covered after April 30, 2004.  Vista determined this date through undisclosed internal policies.  Upon receipt of this termination notice in June, Vista notified Plaintiff's providers, including CSSC, that it was seeking recoupment of any benefits paid after April 30, 2004, and stopped payment for Plaintiff's recent medical services.

Plaintiff was then contacted directly by CSSC for payment.  There is no evidence that Plaintiff himself ever paid any of his medical bills, though Vista did pay some benefits to CSSC for which they received recoupment.  CSSC obtained a judgment in state court against Plaintiff for $17,608, which is the amount of benefits Plaintiff is seeking in this action.

Plaintiff moved for summary judgment, while Vista filed a cross-motion for

3

summary judgment.  The Court granted and heard oral argument.

## II.  DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. at 249-50.

### B.  ERISA Review

The Eleventh Circuit recently reaffirmed the "six-step process 'for use in judicially reviewing virtually all ERISA-plan benefit denials':

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
> (2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
> (3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
> (5) If there is no conflict, then end the inquiry and affirm the decision.
> (6) If there is a conflict of interest, then apply heightened arbitrary and capricious review to the decision to affirm or deny it."

White v. Coca-Cola Co., -- F.3d --,  2008 WL 4149706, 4 (11th Cir. Sept. 10, 2008), quoting Williams v. BellSouth Telecommunications, Inc., 373 F.3d 1132, 1137-38 (11th Cir.2004) (the sixth step is now in doubt given the U.S. Supreme Court decision in Metropolitan Life Insurance v. Glenn, 128 S.Ct. 2343, 2350-51 (2008)).

5

### C.  Eligibility--Termination Provisions

In reviewing the plan administrator's decision, Defendant argues that the Court need merely to look at the plain language of the Plan to find that it correctly determined that Plaintiff was no longer eligible for membership in the Plan.  Defendant directs the Court to the eligibility section, which states that members must be full time employees working at least 25 hours per week.  Plan, Section 1.A, p. 0005 [DE 13-2 at p. 9 of 84]. Plaintiff's own affidavit states that he took leave on August 11, 2003 and never returned to his duties.  Plaintiff argues, however, that he was on part-time status in 2004, and the Plan gave the employer the option of covering part-time employees, or, that he was on medical leave status and still employed. Id.  Defendant's counsel conceded at the hearing the fact that employees are covered during periods of medical leave.

Defendant next argues that Plaintiff and TAG  had a duty to notify Vista of any change in status within 31 days of such event.  Plan, Section 1, B.5 at p. 0012. Defendant asserts that Plaintiff breached this duty by not timely notifying it of his change in work hours.  Plaintiff argues that his change to part-time status did not affect his eligibility, and therefore no notice was required.  There is no evidence as to how and why TAG took so long to notify Defendant of Plaintiff's alleged change in eligibility.

Finally, Vista relies upon the disclaimer stated in the Plan that **"Prior Authorization is not a guarantee of payment and will not result in payment of benefits that would not otherwise be payable**."  Plan, Section 4.H at 0028 (emphasis in original).   However, Plaintiff invokes equitable estoppel in response under the facts of this case.  The Court will address this issue later in this order.

6

### D.  Claim Administrator's Decision "Wrong"

The Court's first step is to apply a *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong."  The Plan provisions do not address the situation of medical leave and/or part time status.  The Plan mentions part-time status as an option for the employer to invoke to provide coverage, but no further information is given as to whether TAG invoked this provision, other than the eligibility provision cited above requiring 25 hours of work per week.  However, it is true that some medical leave employees are still considered eligible.

Plaintiff himself was provided coverage under the Plan during months of his part-time or medical leave, however the time between August of 2003 and April of 2004 may be characterized.  For reasons unknown, TAG notified Vista in June of 2004 of Plaintiff's termination of eligibility for coverage retroactive to January of 2004.  Vista relied upon some undisclosed internal policy to make the benefits decision to terminate Plaintiff's benefits as of April 30, 2004 and unilaterally refunding his May and June premiums to TAG.  Plaintiff invokes equitable estoppel to preclude this retroactive termination.  As the Court does find equitable estoppel to be appropriate, the Court concludes that Vista's benefits denial decision is wrong.

Turning to "step two," Vista does appear to have been vested with full discretion in reviewing claims.  Vista was the claims administrator.  There is no mention in the Plan that any other entity had discretion to resolve claims.[2]  See Section 7 and 8 of

---

[2]  Other than an appeal to the State of Florida regulatory body after denial of a grievance by Vista.

Plan, pp.0049-0064 of DE 13-2. Under "step three," since the administrator's decision is "de novo wrong," and he was vested with discretion in reviewing claims, there does appear to be "reasonable" grounds to support the decision under the more deferential arbitrary and capricious standard. As explained above, the policy appears to allow retroactive termination, as authorization is no guarantee of coverage, and Plaintiff conceded he was not working more than 25 hours a week as a "full-time employee." Thus, though the Court finds the decision to be wrong, there are reasonable grounds to support the decision.

However, under "step four," the Court concludes that Vista was operating under a conflict of interest as it had full discretion to resolve the claims yet would be responsible for paying the claims if coverage existed. Its financial conflict of interest is evident. Turning to the heightened arbitrary and capricious review to the decision under "step six," the Court concludes that the doctrine of equitable estoppel applies to reverse the coverage decision.[3]

### E.  Equitable Estoppel

Plaintiff asserts that it is unfair and inequitable to retroactively terminate his benefits after he relied upon Vista's authorizations to obtain treatment. Defendant argues that retroactive termination is allowed under ERISA, citing to Novak v. Irwin Yacht and Marine Corp., 986 F.2d 468 (11th Cir. 1993). In order to invoke equitable estoppel in an ERISA action, a plaintiff must show an ambiguous plan provision and an

---

[3] The Court would reach this decision whether or not a heightened arbitrary and capricious standard was appropriate.

oral interpretation of that provision. 986 F.2d at 472. In Novak, an employee underwent emergency care during May of 1989 for which CIGNA gave authorization to the hospital. However, his employer sent notice of termination of the entire group plan to CIGNA in late May requesting termination as of April 30, 1989. Id. at 470. The employer did not pay for coverage for the month of May for any of its employees. CIGNA, pursuant to the plain language of the plan, retroactively terminated the plan as of April 30, 1989, the last date of the period for which prepayment was made. Id., 471. The Eleventh Circuit held that this interpretation was correct, and, that equitable estoppel under ERISA federal common law was not appropriate because the plan language was not ambiguous. Id. at 472; see also Umano v. W.C. Robinson & Associates, 352 F.Supp.2d 1259, 1265 (S.D.Fla. 2004) (J. Gold).

Plaintiff argues in this case that the ambiguous nature of the part-time employee plan provisions as applied to a single employee not working full-time due to medical leave, coupled with Vista's oral confirmation of coverage during months of authorized medical treatment of Plaintiff while he was on part-time or medical leave status, allow equitable estoppel in this case. Unlike in Novak, the subscriber here paid his individual premiums through June 30, 2004, yet Vista chose April 30, 2004 as the coverage termination date after the employer notified Vista in June of the January termination. The policy language is unclear how long a subscriber can stay in covered status while on medical leave and who is to decide such status. If Vista is relying upon TAG to provide such notice, TAG's significant delay in notifying Vista of Plaintiff's termination is not Plaintiff's fault. He prepaid his premiums through TAG, his employer, which were

9

accepted by Vista through June 30.  His retroactive termination by Vista is thus unconscionable, an issue specifically not addressed by the Eleventh Circuit in Novak. 986 F.2d at 472, n.4.  This Court concludes that retroactive termination is unconscionable as applied to an insured who has paid his premiums, is provided authorization for treatment, and who detrimentally relies upon authorization to incur medical expenses.

### III.  CONCLUSION

The Court determines that there are no genuine issues of material fact in dispute, thereby making summary judgment appropriate in this ERISA action.  As the Court concludes that Vista is equitably estopped from retroactively terminating Plaintiff from coverage, Plaintiff's motion for summary judgment is therefore granted, while Defendant's cross-motion is denied.  Plaintiff is entitled to summary judgment in the amount of $17,608.00, and may file an appropriate and timely motion for attorney's fees and costs pursuant to ERISA.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [DE 11] is hereby **GRANTED**;

2. Vista Health Plan's Cross-motion for Summary Judgment [DE 13]is hereby **DENIED**;

3. Plaintiff's Motion for Judgment on the Pleadings [DE 16] is hereby **DENIED as moot**;

4.      The Court will separately enter a final summary judgment in favor of Plaintiff.

**DONE and ORDERED** in chambers in Fort Lauderdale, Broward County, Florida, this 17th day of October, 2008.

```
_____
JAMES I. COHN
United States District Judge
```

Copies furnished to:

Counsel of Record on CM/ECF